Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 438 | **DATE** | 1/10/2003 |
| **CASE TITLE** | Taco Bell Corp. vs. Continental Casualty Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: TIG Insurance Company's Motion to Intervene or Dismiss is DENIED WITHOUT PREJUDICE to its renewal, if at all, following final resolution of the action in Wrench LLC v. Taco Bell Corp., No. 1-98-CV-45, currently pending in the United States District Court for the Western District of Michigan.

■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| ☐ No notices required, advised in open court. | number of notices | Document Number |
| ☐ No notices required. | | |
| ☐ Notices mailed by judge's staff. | JAN 13 2003 | |
| ☐ Notified counsel by telephone. | date docketed | |
| ✓ Docketing to mail notices. | docketing deputy initials | 78 |
| ☐ Mail AO 450 form | | |
| ☐ Copy to judge/magistrate judge | date mailed notice | |
| WAP / courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TACO BELL CORP.,<br>        Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY<br>and ZURICH AMERICAN INSURANCE<br>COMPANY,<br>        Defendants.<br><br>CONTINENTAL CASUALTY COMPANY,<br>        Cross-Claimant,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY and TACO BELL CORP.,<br>        Counter-Defendants.<br><br>CONTINENTAL CASUALTY COMPANY,<br>        Third-Party Plaintiff,<br><br>v.<br><br>ZURICH INSURANCE COMPANY,<br>        Third-Party Defendant.<br><br>TACO BELL CORP.,<br>        Cross-Claimant,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY,<br>        Cross-Defendant. | **F I L E D**<br><br>JAN 1 0 2003<br><br>JUDGE HARRY D. LEINENWEBER<br>U.S. DISTRICT COURT JUDGE<br><br><br>Case No. 01 C 0438<br><br>Judge Harry D. Leinenweber<br><br>DOCKETED<br><br>JAN 1 3 2003 |

## MEMORANDUM OPINION AND ORDER

    Plaintiff Taco Bell Corporation, a California corporation ("Taco Bell"), brings this one-count First Amended Complaint against Continental Casualty Company, an Illinois corporation



("Continental"), and Zurich American Insurance Company, a New York corporation ("Zurich" and, together with Continental, the "Defendants") seeking a declaratory judgment that the Defendants have a duty to defend Taco Bell in connection with litigation currently pending in the Western District of Michigan under the caption *Wrench LLC v. Taco Bell Corp.*, No. 1-98-CV-45. Plaintiff rests the subject matter jurisdiction of this Court on 28 U.S.C. 1332. Presently before the Court is TIG Insurance Company's ("TIG") Motion to Intervene or Dismiss. For the following reasons, the Court denies the motion without prejudice.

## BACKGROUND

The Plaintiff in the underlying *Wrench* action alleges that Taco Bell misappropriated certain advertising ideas related to a Chihuahua for its use in a national advertising campaign. The *Wrench* action is currently set for trial in March of this year.

During the relevant time period in *Wrench*, Taco Bell carried two consecutive primary commercial general liability policies. The first, issued by Continental and covering the time period January 1, 1997 through October 6, 1997 ("Policy Period 1"), contains a liability limitation of $5,000,000. The second, issued by Zurich and spanning from October 7, 1997 through January 1, 1999 ("Policy Period 2"), contains a liability limitation of $3,000,000. Each of these primary policies insured Taco Bell against, inter alia, "advertising injury" liability and promised defense and indemnity against any claims by third parties alleging such

injuries. During Policy Period 1, Taco Bell also carried $5,000,000 of excess insurance underwritten by Zurich; during Policy Period 2, Taco Bell carried $20,000,000 of excess insurance underwritten by TIG. The damages demanded in the *Wrench* case exceed the combined liability limits of the Continental and Zurich primary policies.

On December 21, 2001 and February 26, 2002, respectively, Taco Bell and Continental filed cross-motions for partial summary judgment on the issue of Continental's alleged duty to defend. On August 27, 2002, Taco Bell and Continental agreed to a confidential "conditional settlement" regarding Continental's defense obligations in *Wrench*, and each subsequently withdrew its motion for summary judgment. In addition, Taco Bell voluntarily dismissed certain counts (Counts 1, 3 and 4) in its Complaint relating to Continental's alleged breach of its duty to defend. Count 2 of the Complaint, which seeks a declaratory judgment that the Defendants have a duty to defend Taco Bell in *Wrench*, is all that remains.

In its present form, then, the scope of Taco Bell's complaint is limited to Defendants' alleged duty to defend, although Taco Bell was careful expressly to "reserve[] the right to seek indemnity from Continental and Zurich if there is a judgment or settlement of the *Wrench* action." (Compl. ¶ 16.) Through cross-claims and a third-party complaint, Continental seeks contribution from Zurich for any amounts that Continental may be required to pay Taco Bell in connection with the *Wrench* litigation.

## DISCUSSION

TIG has applied under Federal Rule of Civil Procedure 24 to intervene in this case as a third-party defendant to Continental's cross-claims and third party complaint against Zurich. Alternatively, TIG contends that it must be joined as a necessary and indispensable party under Federal Rule of Civil Procedure 19 ("Rule 19"). As discussed below, TIG cannot presently satisfy the requirements of either rule and its motion must accordingly be denied.

### *Intervention as of Right*

Federal Rule of Civil Procedure 24(a)(2) ("Rule 24(a)(2)") provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, a proposed intervenor bears the burden of establishing four independent elements: (1) an interest relating to the property or transaction at issue; (2) timeliness of application; (3) that disposition of the action may in a practical sense impair or impede the ability to protect that interest; and (4) inadequate representation of that interest by the current parties to the

litigation. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001).

### *Interest*

Under Rule 24(a)(2), the interest asserted must be "direct, substantial and legally protectable." *Heyman v. Exch. Nat'l Bank*, 615 F.2d 1190, 1193 (7th Cir. 1980)(internal quotation marks omitted). In fact, "[t]he interest must be so direct that the applicant would have a right to maintain a claim for the relief sought." *Id.*; *cf. Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir. 1982)(A Rule 24(a)(2) "interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit."). A claimed interest will not pass muster if it is merely "contingent," *id.*, or "conjectural," *Nat'l Cas. Co. v. Davis*, 1991 WL 101648 at *1 (N.D. Ill. June 3, 1991).

All parties agree that TIG has neither a right nor a duty to defend Taco Bell in *Wrench*. As an excess insurer during Policy Period 2, however, TIG does have a contingent duty to indemnify Taco Bell up to $20,000,000, but *only if* Taco Bell settles, or suffers an adverse judgment in, *Wrench* for more than $3,000,000 (the liability limit of the underlying primary policy issued by Zurich) on terms that are otherwise covered by the TIG policy.

In Illinois, the duty to defend and the duty to indemnify are "separate and distinct." *Guillen v. Potomac Ins. Co.*, 751 N.E.2d 104, 110 (Ill. App. 2001). In particular, "[a]n insurer's duty to defend its insured is much broader than its duty to indemnify."

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992).

> In order to determine whether the insurer's duty to defend has arisen, the court must compare the allegations of the underlying complaint to the policy language. If the court determines that these allegations fall within, or *potentially within*, the policy's coverage, the insurer has a duty to defend the insured against the underlying complaint.

*Id.* (emphasis in original). In contrast,

> the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it. If so, the duty to indemnify arises if the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage.

*Id.* at 1221 (emphasis in original). Put another way, "the duty to indemnify arises when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. One does not become legally obligated until a judgment or settlement is reached between the parties." *Guillen v. Potomac Ins. Co.*, 751 N.E.2d 104, 132 (Ill. App. 2001); *accord Commercial Underwriters Ins. Co. v. Aires Envtl. Svcs., Ltd.*, 2002 WL 31017617 at *3 (N.D. Ill. Sept. 9, 2002) (Under Illinois law, a duty to defend "does not necessarily give rise" to a duty to indemnify).

Because of the clear distinction between these two duties – the duty to defend based simply on the allegations in the complaint and the duty to indemnify based on the actual facts underlying

final determination of the insured's liability – "an insurer can normally dispute coverage even after a court determines there is a duty to defend." *Aetna Cas. & Sur. Co. v. O'Rourke Bros., Inc.*, 776 N.E.2d 588, 596 (Ill. App. 2002). Based on the same logic and legal principles, the Seventh Circuit has held in the declaratory judgment context that an "action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe for adjudication." *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992); *see also Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992)("Illinois law is clear that the determination of . . . a duty to indemnify is not ripe until the underlying litigation is terminated."); *but cf. Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680-81 (7th Cir. 1992)(holding that Seventh Circuit rule that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody . . . state[s] a general rule rather than an absolute one" since "Article III requires only a probabilistic injury"). As the court in *Cruz v. County of DuPage*, 1998 WL 832642 (N.D. Ill. 1998) put it:

> The general rule in determining justiciability of a declaratory judgment claim regarding an insurer's duties toward an insured is that a claim of the duty to defend an insured against claims raised by a primary plaintiff is ripe during the pendency of the primary lawsuit but that a claim of the duty to indemnify that

> insured against damages from the primary lawsuit is not ripe (and, hence, not a justiciable controversy) until after the primary lawsuit has been resolved, *i.e.*, either by settlement or by a finding of liability against the insured.

*Cruz*, 1998 WL 832642 at *4 (collecting cases). Underlying these declaratory judgment decisions is the fundamental recognition that Article III justiciability requires a case or controversy to be "definite and concrete" and to represent a "real and substantial controversy," as "distinguished from a difference or dispute of a hypothetical or abstract character . . . [or] an opinion advising what the law would be on a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1934).

Measured against these background legal standards, it is clear that, at present, TIG has nothing more than a contingent duty to indemnify Taco Bell, and it is sheer speculation whether that duty will ever be triggered. For example, Taco Bell may prevail in *Wrench* (in which case the question of TIG's duty to indemnify will be rendered moot), it may lose or settle the case for less than the $3,000,000 liability limit of the Zurich primary policy (in which case the question of TIG's duty to indemnify will be rendered moot), or it may lose or settle the case but not on terms that fall within the coverage of TIG's policy (in which case TIG would face no financial exposure). Moreover, although Taco Bell continues to incur defense costs in *Wrench* (currently estimated by Continental at more than $5,000,000), TIG's contingent indemnity obligation is

unaffected by such costs – any amounts that might be reimbursable by Continental and/or Zurich do not count toward exhaustion of either the Continental or Zurich primary layer policy limits.

In its current posture, the complaint is addressed only to the question of the Defendants' duty to defend Taco Bell in *Wrench*. It is explicitly *not* addressed to the separate and independent question of any insurer's potential duty to indemnify. (*See* Compl. ¶ 16.) Unless and until Taco Bell settles, or is held liable in, *Wrench* on terms and in an amount covered by TIG's policy, TIG's interest in this case will remain contingent, conjectural and unripe. *Cf. Folkstone Maritime, Ltd. v. CSX Corp.*, 1989 WL 165059 at *4 (N.D. Ill. Dec. 28, 1989)("However certain the insurers may be that they will eventually make a payment to CSX, the fact remains that the Insurers cannot say what the amount of the payment will be or when the payment will be made. . . . [Such a claim] lacks sufficient objective indicia of certainty to be deemed a direct, substantial and legally protectable interest. . . . ").

Under the present circumstances, TIG lacks a cognizable "interest" in this case under Rule 24(a)(2) and, accordingly, its motion to intervene as of right must be denied.

### Timeliness

TIG's motion to intervene is untimely not because it comes too late, but rather because, for the reasons just discussed, it is premature. *Cf. id.* at *2 n.1. If and when the *Wrench* action is

resolved in a way that implicates TIG's duty to indemnify, TIG will be free to move to intervene at that time.

### Impairment

"The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). As already explained, the only legal question to be resolved in the instant action is whether the Defendants' owe Taco Bell a duty to defend, an inquiry which will require the Court to "compare the allegations of the underlying complaint [in *Wrench*] to the [Continental and Zurich] policy language . . . [and to determine whether those] allegations fall within, or *potentially within,* the policy's coverage." *Outboard Marine Corp.*, 607 N.E.2d at 1220 (emphasis in original). Even *if* this Court holds that Zurich has a duty to defend Taco Bell in Policy Period 2, TIG will nevertheless remain free in the future to contest coverage in the event Taco Bell incurs liability in the *Wrench* case. *See O'Rourke Bros., Inc.*, 776 N.E.2d at 596 (acknowledging that "an insurer can normally dispute coverage even after a court determines there is a duty to defend"). This is certainly true as a legal matter, in that the doctrines of *res judicata* and/or collateral estoppel do not operate against non-parties to a judicial decision. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F.Supp. 1057, 1066 (N.D. Ill. 1990). It is also

true as a "practical matter" for Rule 24(a)(2) purposes. For even though TIG may feel some attenuated *stare decisis* effect from the Court's future construction of the Zurich policy language at issue,

> a simple claim of potential *stare decisis* effect is not enough. Instead [a proposed intervenor] must show the presence of additional factors that would give the decision in [the current] case compelling persuasive force in [its] later litigation. That would be so, for example, when a proposed intervenor would be forced to present *identical issues of law and fact* to the same court in a later action.

*Nat'l Union Fire Ins. Co. v. Cont'l Ill. Corp.*, 113 F.R.D. 532, 536 (N.D. Ill. 1986)(emphasis supplied).

Here, any potential future resolution of TIG's duty to indemnify will turn not on the bare allegations in the *Wrench* complaint, but rather on the <u>actual</u> facts underlying an adverse decision in, or settlement of, the *Wrench* action. *Cf. Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569 (D. Del. 1981) (noting that "where the identical issues of law and fact are not controlling, the effect of *stare decisis* will not be enough to support intervention under Rule 24(a)(2)"). Although the "actual" facts underlying resolution of the *Wrench* action may turn out to be coextensive with, or entirely subsumed by, the allegations in the instant complaint (resulting in the same questions of fact and law being presented for decision at a later point), this is "too uncertain and remote," *Cas. Indem. Exch. v. Village of Crete*, 731 F.2d 457, 461 (7th Cir. 1984), to be known at this stage. Even in

light of this possibility, the Court holds that, on balance, TIG has not convincingly satisfied the "impairment" prong of Rule 24(a)(2). In any event, as previously concluded, TIG does not satisfy the "interest" or "timeliness" prongs of Rule 24(a)(2), and "intervention is a game in which *one* strike is out," *Folkstone*, 1989 WL 165059 at *2 (internal quotation marks omitted; emphasis in original).

### *Inadequate Representation*

Because TIG has no presently cognizable "interest" in this case under Rule 24(a)(2), the question whether such an interest is "adequately represented" is moot. Nonetheless, let us suppose *arguendo* that TIG has a valid Rule 24(a)(2) interest in whether Zurich has a duty to defend Taco Bell during Policy Period 2. TIG would obviously like to see coverage limited to Policy Term 1 and is concerned that "Zurich lacks TIG's interest in asserting that coverage applies only in Policy Term 1 because Zurich exposes millions less if coverage were found instead to apply primarily during Policy Term 2." (Reply Br. at 8.) TIG should have no cause for concern – closer analysis suggests Zurich would indeed aggressively oppose a determination that it has a duty to defend in Policy Term 2.

TIG appears to assume that Zurich has already determined that its potential defense and indemnity obligations under its primary policy in Policy Period 2 will be less than the $5,000,000 liability limitation under its excess policy in Policy Period 1.

- 12 -

Under that assumption, TIG reasons, Zurich would rather concede its duty to defend during Policy Period 2, hoping that any liability would be concentrated (or, better, exist exclusively) during that term, where its liability limitation is capped at $3,000,000.

TIG's argument does not withstand scrutiny. First of all, even *if* Zurich outright conceded a duty to defend in Policy Period 2, that would not in any way eliminate their potential indemnity obligation as an excess insurer during Policy Period 1. In other words, it is not as though Zurich is faced with an *ex ante* choice between potential losses in acting *either* as excess insurer during Policy Period 1 *or* primary insurer during Policy Period 2. At the duty-to-defend stage, Zurich has no say in whether its potential duty to indemnify during Policy Period 1 does or does not exist. That determination will all depend on the outcome of the *Wrench* action and whether it turns out that Taco Bell's alleged injuries are spread over both Policy Periods 1 and 2. Second, since Zurich is stuck in Policy Period 1, it would naturally have every incentive to fight the extra burden represented by a possible determination that it has a duty to defend as primary insurer during Policy Period 2. After all, such a finding would subject it to a potentially unlimited defense obligation (as noted, defense costs evidently already exceed $5,000,000) *plus* a potential $3,000,000 primary indemnity obligation.

Finally, even if Zurich *could* somehow choose to limit its indemnity obligation to either Policy Period, it would seem far

more reasonable to choose Policy Period 1. Especially considering the prospect of a potentially unbounded defense obligation, the two million fewer dollars at stake in a potential indemnity obligation during Policy Period 2 hardly seems worth it. Free to choose either Policy Period, Zurich has a credible incentive to accept a known $5,000,000 potential obligation in Policy Period 1 (which, incidentally, would only be triggered after the underlying primary layer of $5,000,000 was exhausted) over a known $3,000,000 potential obligation in Policy Period 2 (which would pay out first as primary insurance) *plus* an unknown potential defense obligation.

The Court holds that the question of "inadequate representation" of TIG's interest is moot in light of the Court's predicate conclusion that TIG lacks a cognizable "interest" under Rule 24(a)(2). Even supposing TIG has such an interest in the case at this point, the Court holds that it is adequately represented by Zurich.

### *Permissive Intervention*

Federal Rule of Civil Procedure 24(b)(2) ("Rule 24(b)(2)") provides that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." "Permissive intervention is wholly discretionary with the district court. . . ." *Keith v. Daley*, 764 F.2d 1265, 1271 (7th Cir. 1985). "In exercising its discretion the court shall consider whether the

intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED.R.CIV.P. 24(b).

TIG's motion to intervene permissively is premature, and therefore untimely, for the same reasons adduced by the Court in its discussion of Rule 24(a)(2). Moreover, as previously discussed, TIG's only interest in this case is a contingent duty to indemnify Taco Bell, and the complaint in its current form is addressed exclusively to the Defendants' alleged duty to defend. Accordingly, TIG's "presence adds nothing to the litigation in terms of resolving these [duty-to-defend] questions." *Folkstone*, 1989 WL 165059 at *6. TIG's "only tie to this litigation" is its potential obligation to indemnify Taco Bell following resolution of the underlying *Wrench* action, "and that tie has not yet been consummated." *Id.* TIG "ha[s] no independent claim which [it] could make in this action," *id.*, but rather only its prospective duty to indemnify. Under these circumstances, the Court holds that TIG's "claim" for Rule 24(b)(2) purposes does not "have a question of law or fact in common" with the main action.

In addition, because TIG and Taco Bell are both domiciled in California for purposes of 28 U.S.C. 1332(c), TIG's intervention in this case would raise grave doubts about the continuing vitality of this Court's subject matter jurisdiction. *See Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1318-19 (7th Cir. 1997) ("The rule is that if there are residents of the same state on both sides of a lawsuit, the suit cannot be maintained under the diversity

jurisdiction even if there is also a nonresident party."). In any event, given the advanced age of this case, the narrow issues presented in the complaint, the significant efforts already expended by the current parties, and the imminence of the trial in *Wrench*, the Court holds that allowing TIG to intervene permissively at this point is neither necessary nor prudent. *Cf. id.* at *7 ("The admission of any new party brings with it the potential for delay, multiplicity, and confusion. When the interests of such a party are untempered by a vested financial stake in the litigation, these risks must necessarily be greater.")(emphasis in original).

For the foregoing reasons, TIG's motion to intervene permissively under Rule 24(b)(2) is denied.

### *Necessary and Indispensable Party*

TIG finally argues that it is a necessary and indispensable party under Rule 19. Joinder under Rule 19 entails a two-step analysis.

> First, the court must determine whether a party is one that should be joined if feasible - called, in the old days, a "necessary party." If the court concludes that the party should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence. If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as "indispensable" and the action is subject to dismissal. . . .

*Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). A person is a "necessary party" if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

On the facts of this case, the Court need only complete the first step of the two-part inquiry, since TIG does not qualify under Rule 19 as a "necessary party." In particular, for the reasons previously discussed, TIG's absence will not hamper in the least the Court's determination of the Defendants' duty to defend Taco Bell in connection with the *Wrench* action, as all of the primary insurers with a potential duty to defend Taco Bell are already parties to this action. Furthermore, for the same reasons that TIG failed the "interest" and "impairment" prongs of Rule 24(a)(2), so too it fails the "interest" and "impairment" criteria of Rule 19. Finally, "the persons already parties" will *not* be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by reason of TIG's claimed interest. As repeatedly emphasized, TIG's only interest in this case is its presently unripe, contingent duty to indemnify Taco Bell. Thus, even if TIG makes good on its threat to file a

declaratory judgment action in state court, the state court will just as surely recognize the limits of TIG's interest and reject the case as unripe for consideration. *Penda Corp.*, 974 F.2d at 833 ("Illinois law is clear that the determination of . . . a duty to indemnify is not ripe until the underlying litigation is terminated.").

Accordingly, TIG's motion for Rule 19 joinder is denied.

### CONCLUSION

For the foregoing reasons, TIG Insurance Company's Motion to Intervene or Dismiss is **DENIED WITHOUT PREJUDICE** to its renewal, if at all, following final resolution of the action in *Wrench LLC v. Taco Bell Corp.*, No. 1-98-CV-45, currently pending in the United States District Court for the Western District of Michigan.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: January 10, 2003